IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GERALD R. MOLLOHAN, et al.,

           Plaintiffs,

v.                               CIVIL ACTION NO.   2:13-cv-32251

PAUL D. WARNER, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Gerald R. Mollohan's Amended Complaint, Defendants' Counterclaim, and the parties' cross-Motions for Summary Judgment.   As discussed below, the Court finds that the doctrines of *res judicata* and collateral estoppel bar many of Plaintiff's claims. The Court dismisses these claims in order to protect the validity of the Court's judgment in Case No. 2:11-cv-00104.   The Court grants summary judgment in favor of Defendants on the claims that remain.   The Court further dismisses Defendants' counterclaim *sua sponte*, after providing notice of the pleading's inadequacies and an opportunity for response.

*I.     BACKGROUND*

This case centers on a long-simmering trademark dispute between a motorcycle club and its disaffected ex-member.   Plaintiff Gerald Mollohan left Defendant Brothers of the Wheel M.C. Executive Council, Inc.'s ("BOTW") motorcycle club in 2000.   He started his own motorcycle club shortly thereafter.   Although Mollohan could have given his new club virtually any name, he chose "Brothers of the Wheel Nomads."   Mollohan also began using the logo of his former club

to represent his own.[1]  Not surprisingly, BOTW sued Mollohan for trademark infringement and won judgment in its favor in a case that has now been resolved for several years.  (*See* Final J. Order, ECF No. 139, Case No. 2:11-cv-00104 (Feb. 19, 2014).)  An overview of that acrimonious legal battle is necessary to place the current litigation, which Mollohan initiated, in proper context.

BOTW began in 1977 and operates chapters in West Virginia, Ohio, and Kentucky.  On February 15, 2011, BOTW filed a complaint against Mollohan in this Court.  (*See* Case No. 2:11-cv-00104.)  BOTW's complaint alleged Mollohan violated federal and state trademark laws by developing and using in commerce a mark confusingly similar to a collective mark BOTW uses to identify its own motorcycle club.  BOTW alleged that Mollohan was using a substantially similar mark to publicize his own motorcycle club.

BOTW applied for the trademark mentioned above on August 7, 2003.  On February 15, 2005, the United States Patent and Trademark Office ("USPTO") issued the trademark and assigned Registration Number 2926222.  The trademark protects the name "Brothers of the Wheel M.C." and the logo of the organization.  According to its by-laws, BOTW retains ownership over its trademark-protected name and logo but grants a license to members and retirees to use the protected items.  As a retiree, Mollohan received a limited license to use BOTW's protected items upon his retirement, again in accordance with the by-laws of the club.  By starting his own rival club using a name and logo nearly identical to its own, BOTW claimed that Mollohan violated the terms of his license as well as laws protecting trademarks.  Mollohan made a *pro se* appearance in the case and has continued to represent himself *pro se* in the present case.

---

[1] The Court's summary judgment order of November 14, 2012, entered in Case No. 2:11-cv-00104, remains valid.  The Court relies on that order for the facts recited here.

2

While the 2011 litigation commenced in this Court, Mollohan attempted to acquire trademark protection for a logo of his own.[2]  The USPTO refused his applications on May 23, 2011, July 14, 2011, and August 2, 2011, each time basing its decision on the conclusion that Mollohan's proposed trademark was too similar to BOTW's.  Mollohan made slight changes to his mark and resubmitted the application, which the USPTO again denied on September 10, 2012. Meanwhile, this Court entered summary judgment in BOTW's favor on November 14, 2012, finding Mollohan had infringed on BOTW's protected logo and enjoining him from use of the logo to identify a motorcycle club organized or operating in West Virginia, Kentucky, or Ohio.   (ECF No. 50 at 23, Case No. 2:11-cv-00104.)   The Court further ordered Mollohan to cease using the word mark "Brothers of the Wheel" or the acronym "BOTW" to identify his motorcycle club. Mollohan was directed to dissolve any business entity in these states bearing the name "Brothers of the Wheel."

At that time, the Court observed that Mollohan had also persisted in efforts to trademark the standard character "Brothers of the Wheel."   By the time the Court entered summary judgment in BOTW's favor, the USPTO had posted Mollohan's trademark for potential opposition. Because BOTW inexplicably failed to oppose the trademark's registration in accordance with applicable procedures, the Court forecasted that the mark "would probably be issued to Defendant Mollohan."   (ECF No. 59 at 10, Case No. 2:11-cv-00104.)    The Court's premonition turned out to be accurate.   On March 5, 2013, the USPTO issued a trademark for the word mark "Brothers of the Wheel" to Mollohan.   (*See* Trademark Certificate Reg. No. 4299480 (ECF No. 99-1).)   The

---

[2]  Visual depictions of the two logos can be found in the Court's Memorandum Opinion and Order entered November 14, 2012 in Case No. 2:11-cv-00104.   (ECF No. 59 at 7–8, Case No. 2:11-cv -00104.)

trademark is on the supplemental register and approved for use on embroidered patches for clothing.   (*Id.*)

During the 2011 case, Mollohan frequently invoked BOTW's by-laws as an excuse for his reproduction of the trademark-protected word mark and logo.   In his objections to the magistrate judge's proposed findings and recommendation, for example, Mollohan argued that he "received the permission of [BOTW] upon his retirement in 2000 to use [BOTW]'s collective membership mark 'for life' as stated in the . . . By-Laws."   (ECF No. 54 at 4, Case No. 2:11-cv-00104.)   The Court rejected this and similar arguments, concluding that BOTW's by-laws, while not a model of clarity, by no means grant Mollohan a license to reproduce BOTW's logo or one similar   to it. (ECF No. 59 at 14, Case No. 2:11-cv-00104.)   What Mollohan did not reveal prior to the entry of the summary judgment opinion was that he was in the process of seeking copyright protection for his own by-laws, the words "Brothers of the Wheel," and the domain name "botwmc.com." Accepting the validity of his copyright certificates, Mollohan has now also apparently obtained copyright protection over a work identified as "by-laws" as well as the phrase "Brothers of the Wheel."   (*See* Reg. Cert. No. TXu 1-857-219 (ECF No. 100-2).)

Emboldened by his success and armed with his recently acquired trademark and copyrights, Mollohan filed a counterclaim for trademark infringement and supplemental claims for copyright infringement on July 25, 2013, September 4, 2013, and September 9, 2013.   Mollohan demanded a court order requiring BOTW to cease and desist use of the words "Brothers of the Wheel," a phrase which he maintained he now had exclusive right to use.   He appeared untroubled by the fact that the Court had entered summary judgment in BOTW's favor approximately eight months earlier.   The Court denied the counterclaim and motions for leave to file supplemental pleadings

as untimely.   The pleadings were, in the Court's words, "inordinately late."   (Mem. Op. 3–4, ECF No. 119 (Oct. 29, 2013), Case No. 2:11-cv-00104.)

The parties' relationship grew all the more rancorous.   BOTW filed a motion to hold Mollohan in contempt on July 10, 2013; Mollohan answered with a cross-motion arguing that BOTW was actually the contumacious party.   The Court denied both motions at a hearing held February 14, 2014.   Although Mollohan was actively continuing in his endeavor to invalidate BOTW's trademarks and legitimize his own before the USPTO, the Court declined to make a finding that its injunction reached Mollohan's trademark applications.   The Court clarified its injunction to specify that "use" of the Brothers of the Wheel logo and word marks "includes the use by any other person at the direction of Defendant Mollohan and shall include use, in any manner, on the Internet."   (ECF No. 139 at 2, Case No. 2:11-cv-00104.)   Further, after concluding that BOTW could not prove it had suffered actual damages as a result of Mollohan's trademark infringement, the Court entered an award of nominal damages and $17,450 in attorney fees.   (*Id.*)

Mollohan vigorously contested the Court's final judgment order.   In addition to noticing his appeal to the Fourth Circuit, Mollohan filed no less than nine motions to stay, reconsider, or amend the judgment order in the two months following its entry.   Though the case had never proceeded to trial, Mollohan requested a new one.   Then Mollohan changed course slightly to renew his substantive attacks against BOTW's trademarks.   In April and May of 2014, Mollohan filed at least ten motions seeking the cancellation of BOTW's trademarks, the judicial dissolution of BOTW's West Virginia chapters, and injunctive relief against BOTW for alleged copyright infringement.   He also attempted to assert causes of action against BOTW for violations of the

5

Racketeer Influenced and Corrupt Organizations ("RICO") and Lanham Acts, as well as for tortious interference and defamation.   (ECF No. 164 at 3, 172 at 3, 174 at 3, 175, 176.)   The Court resolved Mollohan's post-trial motions by Memorandum Opinion and Order entered August 11, 2014.   (ECF No. 183.)   The Court found no merit in Mollohan's varied bases for relief from the judgment order.   It also reviewed Mollohan's motions related to the disputed word mark, but found his claims for relief were not appropriately presented at such a late stage in the litigation. The United States Court of Appeals for the Fourth Circuit affirmed the Court's summary judgment findings and subsequent judgment order.   *Brothers of the Wheel M.C. Exec. Council v. Mollohan*, 609 F. App'x 149 (4th Cir. 2015).

This brings the Court to the case at hand.   When the Court dismissed Mollohan's untimely counterclaim for trademark infringement in Case No. 2:11-cv-00104, Mollohan initiated his own lawsuit against BOTW and several of its officers to vindicate his right to exclusive use of the trademark "Brothers of the Wheel."   Mollohan filed suit on December 16, 2013—one year after the Court entered its summary judgment order in the 2011 litigation but prior to the entry of the final judgment order. The original five-count complaint alleged defamation, fraud, trademark and copyright infringement, violations of civil RICO, and tortious interference with business relations. Defendants filed an answer and motion to dismiss for failure to state a claim, followed some time later by a motion to dismiss on grounds of *res judicata*.   The complaint went through several periods of revision by Mollohan.   The operative complaint as of this writing is an amended complaint filed September 2, 2014.   (ECF No. 76.)   The magistrate judge denied the motions to dismiss without prejudice due to the filing of that pleading.   (ECF No. 65.)

6

The Amended Complaint re-alleges the preceding complaint's five counts and adds three counts directed at BOTW's attorney, Richard Lindroth.   BOTW and the other defendants answered with a counterclaim against Mollohan and Frank Visconi, a resident of Tennessee allegedly assisting Mollohan in evading the Court's injunction by filing Mollohan's trademark application and administering the affairs of Mollohan's motorcycle club out-of-state.   Due to Mollohan's continued appearance *pro se*, the instant civil action was referred to Magistrate Judge Dwayne L. Tinsley for submission of proposed findings and recommendations for disposition.   At a status conference held on March 17, 2016, Mollohan voluntarily dismissed Counts 6, 8, and 10 of the Amended Complaint.   (*See* ECF No. 138 (memorializing dismissal).)   On March 17, 2016, the magistrate judge entered an Order and Notice establishing a schedule for discovery and the filing of dispositive motions.   (ECF No. 138.)   The parties were directed to complete discovery by June 15, 2016 and to file dispositive motions by July 1, 2016.

The parties immediately peppered the docket with filings.   To be exact, the parties filed 124 docket entries in a little over three months between the entry of the Order and Notice and the deadline it established for dispositive motions.   A copy of the docket in this case is attached hereto as Appendix A to illustrate this flood of filings, as well as the parties' general tendency to file huge numbers of matters on the docket.   A perusal of the docket reveals that few of these entries bear any relevance to discovery.   Mollohan filed untimely motions to supplement his claims and premature motions for dispositive relief against his adversary.   And in a case where the parties already seem prone to litigate on impulse, the bitterness apparent between them has complicated

7

matters further.[3]   On July 13, 2016, the magistrate judge ordered a cessation of all activity while he considered the parties' filings.

On August 2, 2016, Defendants filed a motion for summary judgment based, in part, on *res judicata*.   (ECF No. 269.)   Mollohan elected not to respond to this or any of Defendants' substantive arguments, but instead filed several documents maligning their counsel for not complying with the Court's local rules and the scheduling order in this case in filing its motion. The magistrate judge held a status conference on January 26, 2017, at which time he suggested Defendants withdraw the motion for summary judgment and refile the motion after resolution of certain discovery disputes that remained pending regarding Mollohan's RICO claim.   The Court withdrew the referral on February 6, 2017 out of frustration over the continuing abuse of the court system presented by this case.   Mindful of the Court's scarce resources and the need to promote respect for final judgments, the Court now considers the question of preclusion.   Afterward, the Court evaluates the parties' cross-motions for summary judgment and the sufficiency of Defendants' counterclaim.

## II.     PRECLUSION DOCTRINES

The doctrines of *res judicata* and collateral estoppel serve "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."   *Parklane Hosiery Co. v. Shore*,

---

[3] For example, Mollohan filed ethics complaints against BOTW's attorney citing unspecified "unethical behavior," (ECF No. 31), the parties moved to hold one another in contempt, and neither seems to hesitate in accusing the other party of fraud, lies, and deception.   (*See* Mollohan Declaration Concerning Fraud Committed on the Part of the Defendant's [sic], (ECF No. 153), BOTW's Motion to Halt Piecemeal Filings, Alleged Submissions of Evidence and Miscellaneous Rants and Ravings by Mollohan (ECF No. 173), Declaration by Mollohan Concerning Defendant's Deceptive Practices, (ECF No. 212), Mollohan Declaration Concerning Defendants['] Additional Falsehoods (Fraud), (ECF No. 260)).

439 U.S. 322, 326 (1979) (citing *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation*, 402 U.S. 313, 328–29 (1971)).   *Res judicata* has been described as a "rule of fundamental and substantial justice," *Peugeot Motors of Am., Inc. v. E. Auto Distributors, Inc.*, 892 F.2d 355, 359 (4th Cir. 1989), whereby "a final judgment on the merits bars further claims by parties or their privies based on the same causes of action."   *Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).   Collateral estoppel, on the other hand, works to preclude "relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery*, 439 U.S. at 356 n. 5.

As a threshold matter, the Court explains its decision to consider the *res judicata* and collateral estoppel defenses *sua sponte*.   Collateral estoppel and *res judicata* are affirmative defenses that typically must be raised by an opposing party.   Fed. R. Civ. P. 12.   Nevertheless, a court may *sua sponte* raise issues of preclusion in "special circumstances," even though the defense has not been raised.[4]   *Arizona v. California*, 530 U.S. 392, 412 (2000) (quoting *United States v. Sioux Nation*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting) (internal quotation marks omitted)).   "This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Id.*; *see also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006) (determining *res judicata* may be raised and considered *sua*

---

[4]  Admittedly, BOTW attempted to raise the defense of *res judicata* and collateral estoppel in both its answer and the motion for summary judgment.   The multitude of court filings, however, seem to have drawn the parties' attention from the issues that appear to be central to this litigation.   The Court is disinclined to postpone this litigation further where it has become abundantly clear that the case should not have proceeded so far in the first place.

*sponte* because it implicates important institutional interests of the judiciary); *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (finding that district court did not err by raising the issue of collateral estoppel on its own because of the "strong public policy in economizing the use of judicial resources of avoiding relitigation").

Such "special circumstances" exist where "a court is on notice that it has previously decided the issue presented."  *Arizona*, 530 U.S. at 412; *see also Saudi v. V. Ship Switz. S.A.*, 93 F. App'x 516, 520–21 (4th Cir. 2004) ("[G]iven the indisputable privity of the parties and the identity of the issues between the instant case and the case upon which the *res judicata* holding rested, we believe that *sua sponte* invocation of the bar was permissible.").  Similarly, the court may invoke *res judicata* on its own where "all relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of *res judicata*." *Carbonell v. La. Dep't of Health and Human Res.*, 772 F.2d 185, 189 (5th Cir. 1985).  Here, the 2011 litigation was litigated in the same court, before the same judge, between identical parties.  Given the substantial factual overlap between the cases, the Court finds that the interests of justice and concerns for judicial efficiency support the Court's *sua sponte* consideration of *res judicata* and collateral estoppel.

The status of the parties' trademark cancellation proceedings only make this course of action further advisable.   The parties have pursued their rights before the USPTO as vigilantly as they have here, and they have competing petitions to cancel the other's trademark pending before the Trademark Trial and Appeal Board ("TTAB").[5]   (Cancellation No. 92056674 (seeking cancellation of Registration No. 2926222); Cancellation No. 92059164 (seeking the cancellation

---

[5] Counterclaim Defendant Frank Visconi filed a similar proceeding against BOTW to cancel Registration No. 2926222.   Visconi's cancellation proceeding has also been stayed by the TTAB.

of Registration No. 4299480).)   Mollohan filed the pending cancellation request on January 14, 2013.   The TTAB suspended the proceeding on August 12, 2013 pending the outcome of the 2011 litigation before the district court, and again on August 14, 2014 to await the resolution of the appeal in that case.   Nearly two years later, on May 12, 2016, the TTAB again suspended the proceeding after being alerted of the present litigation in which Mollohan also sought the cancellation of BOTW's trademark.   BOTW's petition to cancel Mollohan's trademark, Cancellation No. 92059164, was consolidated with Mollohan's cancellation proceeding on September 5, 2014.   That proceeding has also been stayed by the TTAB.

Mollohan's petition to cancel was filed before the initiation of the above-styled case. Given the Court's finding that the instant proceedings are barred by *res judicata* and estoppel, *sua sponte* treatment of these issues allows the TTAB to continue its adjudication of the long-pending petition in an area falling squarely within the TTAB's area of expertise.

### A.   Res Judicata

"The application of res judicata turns on the existence of three factors: '(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.'" *Clodfelter v. Rep. of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013) (quoting *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004)).   The factors are given broad application with an aim to "eliminate vexation and expense to the parties, wasted use of judicial machinery and the possibility of inconsistent results." *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 77 (4th Cir. 1967).   To that end, the Fourth Circuit has made clear that "[t]he preclusive affect of a prior judgment extends beyond claims or defenses actually presented in previous litigation."   *Meekins v. United Transp. Union*, 946 F.2d

11

1054, 1057 (4th Cir. 1991).   "Not only does res judicata bar claims that were raised and fully litigated, it 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Peugeot Motors of Am., Inc. v. E. Auto Distributors, Inc.*, 892 F.2d 355, 359 (4th Cir. 1989) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (4th Cir. 1979)).   "By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, 'res judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.'" *Pueschel*, 369 F.3d at 354 (quoting *Brown*, 442 U.S. at 131)).   Here, there is no question that BOTW's trademark infringement action culminated in a final decision on the merits and that there is an identity of the parties.[6]   The principal issue is whether the identity of the causes of action requirement is satisfied.

"There is no simple test to determine what constitutes the same cause of action for res judicata purposes," *Aliff v. Joy Manufacturing Co.*, 914 F.2d 39, 43 (4th Cir. 1990).   Courts look primarily to whether the claims arise from the same factual basis.   *See id.*   This broad "transactional approach" requires the Court to decide whether Mollohan's claims "arise out of the same transaction or series of transactions or the same core of operative facts" at issue in the 2011 case.   *Pueschel*, 369 F.3d at 355 (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996) (internal quotation marks omitted)); *see also Meekins*, 946 F.2d at 1058 (describing the transactional approach).   The Court must "presume that a litigant has 'done his legal and factual

---

[6] That Mollohan has joined BOTW members in the pending federal action is of no moment.   Mollohan cannot avoid the preclusive effect of *res judicata* by bringing claims that should have been asserted in the prior litigation against additional defendants.   *See McDonald v. Hillsborough Cty. Sch. Bd.*, 821 F.2d 1563, 1566 (11th Cir. 1987) (finding that plaintiff could not avoid the *res judicata* doctrine by joining additional defendants in a repetitive suit realleging claims previously decided against another defendant).

12

homework,' and raised all grounds arising out of the same factual context to support his claims."

*Peugeot Motors*, 892 F.2d at 359 (citing *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 596

(7th Cir. 1986)).

    *Peugeot Motors* demonstrates the application of this rule.   In 1971, Eastern Auto

Distributors, Inc. ("Eastern") entered into a contractual agreement to sell Peugeot automobiles in

a confined geographical area within the eastern United States.   *Id.* at 357.   When the deal turned

sour, Eastern sued Peugeot in 1981 for antitrust violations, civil conspiracy, and breach of contract,

among other causes of action.   A jury returned a verdict in Eastern's favor on the breach of

contract claims after the district court threw out the antitrust and civil conspiracy claims.

Thereafter, Peugeot filed a declaratory judgment action against Eastern in 1987. Eastern answered

with a five-count counterclaim.   *Id.* at 356.   Peugeot moved for summary judgment on several

grounds, including *res judicata* and estoppel.   *Id.* at 359.   The district court granted the motion.

The Fourth Circuit affirmed, reasoning as follows:

> Eastern raises several factual allegations which were either fully litigated or in
> existence at the time of the 1981 litigation. These include allegations that: Peugeot
> in 1981 wrongfully removed the state of Delaware from Eastern's area, Peugeot in
> 1974 attempted to terminate the distributorship, Peugeot in 1975 attempted to force
> Eastern to accept changes in the contract, Peugeot in 1977 and 1978 attempted to
> purchase Eastern, and that Peugeot filed baseless counterclaims in the 1981 case.
> Such claims or claims based on such facts are forever extinguished by the final
> judgment in the 1981 case.

*Id*.

    The logic applies equally here.   The Court begins with Mollohan's defamation claim.

Mollohan's defamation claim plainly arises from the same operative facts as BOTW's trademark

infringement claim.   Mollohan alleges that BOTW published a false statement about Mollohan

on its website, namely: "Anyone claiming to be in a nomad chapter is just using our name and

playing biker."  (Am. Compl. ¶ 76.)   In other words, Mollohan complains that BOTW falsely accused him of misappropriating BOTW's trademark-protected name and logo for use in identifying his "Nomads" club.   These allegations constituted the same essential facts at issue in BOTW's trademark dispute, and the Court's determination that Mollohan had used BOTW's trademarks without permission precludes his defamation claim here.

Next, the Court turns to the civil RICO claim alleged in Count V.   The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (citing 18 U.S.C. § 1962).   The plaintiff must also allege an injury to his business or property as a result of such conduct.   *Id.*   "A 'pattern of racketeering activity' requires 'at least two acts of racketeering activity.'"   18 U.S.C. § 1961(5). The statute defines racketeering activity to include a wide array of criminal conduct, including mail fraud and threats involving bribery and extortion.   *Id.* § 1961(1).

Count V is supported by little more than vague generalities.   At the direction of the Court, Mollohan expanded his RICO allegations by filing a Civil RICO Case Statement on October 1, 2015.   (ECF No. 128.)   In that statement, Mollohan identifies five alleged predicate acts of racketeering activity giving rise to his RICO claim: (1) the extortion of Mark Haynes, a member of Mollohan's motorcycle club, on March 3, 2011; (2) the extortion of Robert Price, a branch chapter president of Mollohan's motorcycle club, on an unspecified date; (3) the extortion of Mollohan by several members of BOTW in the evening and early morning hours of December 31, 2000 and January 1, 2001; (4) BOTW's filing of three trademark applications, which Mollohan alleges constitute independent acts of mail and wire fraud; and (5) the submission of an affidavit filed in support of BOTW's claim for treble damages in the 2011 litigation.   (*Id.* at 10–13.)

14

These alleged acts of racketeering activity share a common evidentiary thread with BOTW's trademark infringement claims: Mollohan's formation of a motorcycle club bearing the name and logo substantially similar to BOTW's.   Assuming the truth of these predicate acts, each can be characterized as an attempt by BOTW to vindicate the rights to its protected marks.   The logical connection between the civil RICO claim and BOTW's claims in the 2011 lawsuit is demonstrated further by Mollohan's filing of a related civil lawsuit in the Circuit Court of Kanawha County, West Virginia.   Mollohan filed his state lawsuit on March 21, 2011—just five weeks after BOTW initiated the federal proceeding.   Mollohan's state law complaint generally alleged defamation, libel, and threats by BOTW against him and members of his "Nomads" club. Mollohan moved to amend his complaint on April 19, 2011 to add factual detail that overlaps exactly with several of the acts that serve as predicates to the civil RICO claim, namely the threat against Mark Haynes and allegations regarding the invalidity of BOTW's trademarks.   The Court finds that these predicate acts arise from the same factual basis from which the previous BOTW case arose.   BOTW sued Mollohan for trademark infringement.   If Mollohan believed BOTW to be preparing fraudulent trademark applications, it was incumbent upon him to bring this defense to BOTW's claims in the related suit.[7]

The tortious interference claim alleged in Count VII appears to be largely duplicative of the civil RICO claim.   Mollohan alleges Defendants Warner, Carey, and Kuhn knew his "Nomads" club was a growing enterprise and engaged in a scheme to intimidate Mollohan as well as his club's existing and prospective members.   (Am. Compl. at 16.)   A West Virginia claim of tortious interference requires the plaintiff to show "(1) existence of a contractual or business

---

[7] Because Mollohan's RICO claim succumbs to *res judicata* in this case, the only outstanding discovery issues are mooted.

15

relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 4, *Garrison v. Herbert J. Thomas Mem'l Hosp. Ass'n*, 438 S.E.2d 6 (W. Va. 1993). Putting aside the obvious inadequacies of Mollohan's allegations, Mollohan alleges that BOTW interfered with expectant "business relationships" between Mollohan and prospective members of his club. Mollohan alleges that BOTW participated in acts calculated to defame and intimidate current and prospective members of Mollohan's motorcycle club. For the reasons stated with regard to the civil RICO claim, this claim arises from the same transaction as BOTW's trademark infringement claims. *Res judicata* bars the claim from proceeding further.

Again, Count XI for naked licensing similarly arises from the same operative facts as BOTW's trademark infringement suit. This cause of action arises under the Lanham Act, 15 U.S.C. § 1127, which states:

> [a] mark shall be deemed to be abandoned . . . [w]hen any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark.

One way in which a mark may be abandoned is through "naked licensing," which occurs "when a trademark owner fails to exercise reasonable control over the use of a mark by a licensee." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 764 (6th Cir. 2005) (internal quotations omitted). In such a case, "the presence of the mark on the licensee's goods or services misrepresents their connection with the trademark owner since the mark no longer identifies goods or services that are under the control of the owner of the mark." *Id.*

Mollohan alleges that BOTW's practice of allowing retired club members to retain use of their colors constitutes an abandonment of any rights to its protected marks. (Am. Compl. at 19.)

16

However, the Court's prior judgment on the merits of the trademark dispute binds the parties "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but [also] as to any other admissible matter which might have been offered for that purpose." *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 579 (1974) (citation omitted). The Court notes that Mollohan made attempts to bring counterclaims based on a theory of naked licensing in the 2011 case. (ECF Nos. 170, 176, Case No. 2:11-cv-00104.) He did not do so until April 2014, however—approximately eighteen months after the Court entered a judgment order granting summary judgment on BOTW's trademark infringement claim. By any standard, a counterclaim filed after summary judgment has been granted in favor of the opposing party is untimely. *See, e.g.*, *McLemore v. Landry*, 898 F.2d 996, 1003 (5th Cir. 1990) (finding counterclaim untimely when submitted six weeks after the district court's ruling on summary judgment motions). Mollohan waived his naked licensing claim by failing to raise it in a timely manner in the 2011 case.

### B.    *Collateral Estoppel*

Collateral estoppel, or "issue preclusion," is related to the doctrine of *res judicata*. Collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 326 (4th Cir. 2004) (quoting *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks omitted)). Application of collateral estoppel turns on five factors:

> (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and

17

necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004)

Application of these principles demonstrates that Mollohan is estopped from bringing his trademark infringement claim. The Court has long known of Mollohan's attempts to trademark the word mark "Brothers of the Wheel." In the related litigation, the Court predicted that the trademark "would probably be issued to Defendant Mollohan." Mollohan's trademark is registered on the Supplemental Register. According to Mollohan's filings, the USPTO issued a trademark to Mollohan for the words "Brothers of the Wheel" on April 4, 2013. Mollohan almost immediately thereafter issued cease and desist letters to known BOTW suppliers, warning them to cease use of what he now claimed was his exclusive trademark. Mollohan filed a counterclaim for trademark infringement against BOTW on July 25, 2013. The Court granted BOTW's motion to dismiss the untimely counterclaim by order issued October 29, 2013.

To establish trademark infringement, Mollohan must prove first, that he owns a valid and protectable mark, and second, that BOTW's "use of a 'reproduction, counterfeit, copy, or colorable imitation' of that mark creates a likelihood of confusion." *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (quoting 15 U.S.C. § 1114(1)(a)). The Court recognizes that the issue of whether Mollohan possesses a valid trademark has not been adjudicated in this or the related 2011 case. However, the second element of a trademark infringement claim—the "confusingly similar" element—is an issue that has already been decided. As part of the 2011 case, the Court determined that BOTW possessed a valid trademark covering the words "Brothers of the Wheel," and that Mollohan was using the mark in a manner likely to

18

confuse consumers.   Mollohan would now have the Court revisit this ruling, finding that it is Mollohan, not BOTW, that holds superior trademark rights.   As the magistrate judge noted in her PF&R in the 2011 case, the trademark held by BOTW is entitled to a presumption of validity and Mollohan "[did] not successfully rebut[] the presumption of validity that [BOTW]'s mark obtained when it became registered."   (ECF No. 31 at 22, Case No. 2:11-cv-00104.)   Mollohan had ample opportunity to contest the validity of BOTW's trademark.   The Court will not revisit these findings merely because Mollohan has acquired his own trademark certificate.   Mollohan's challenge to BOTW trademark is better pursued as a cancellation request before the USPTO.

Mollohan's fraud claim, premised on BOTW's presentation of a color logo in the 2011 litigation, is similarly barred on grounds of issue preclusion.   Mollohan raised this contention in an objection to the magistrate judge's proposed findings and recommendation entered November 2, 2011, in which the magistrate judge recommended the entry of summary judgment in BOTW's favor.   There, Mollohan argued that since no colors are mentioned in BOTW's trademark registration, the magistrate judge erroneously considered the color of the parties' competing logos. In reviewing the objection, the Court agreed with Mollohan that the magistrate judge erroneously considered coloration in BOTW's logo in assessing its similarity to Mollohan's logo.   Ultimately, however, the Court found the objection non-meritorious.   The Court wrote:

> Both marks feature concentric circles separated by motorcycle chains; both marks contain an eagle, wings spread, at their center; the eagle in both marks clutches an American flag in one talon and a battle axe in the other talon; and both marks feature the words "Brothers of the Wheel" in their outermost circle, with the words appearing at the same locations.   In light of these shared features, which account for the bulk of the marks, the Court has no trouble concluding that the marks are substantially similar to one another and remain likely to confuse the public, as Magistrate Judge Stanley concluded in the PF&R.

(ECF No. 59, Case No. 2:11-cv-00104.)

19

By this reasoning, the Court has already determined that Mollohan has not been harmed by BOTW's presentation of its logo in color, as opposed to a black and white.[8]   Mollohan received fair opportunity to address the issue in his objections.   The fact that the Court did not decide the issue in his favor does not justify its reconsideration in this lawsuit.   The Court finds Mollohan estopped from bringing the fraud claim alleged in Count II.

In sum, the Court **FINDS** that Plaintiff's claims in Counts I, V, VII, and XI of the Amended Complaint are precluded by the doctrine of *res judicata*.   Counts II and III of the Amended Complaint is barred by the companion doctrine of issue preclusion.

### III.   SUMMARY JUDGMENT

In light of the foregoing, only two counts of the Amended Complaint remain: Count IV for copyright infringement and Count IX for abuse of process.   By Order and Notice entered March 17, 2016, the magistrate judge set a discovery schedule to govern the litigation and established a July 1, 2016 deadline for the filing of summary judgment or other dispositive motions.   (ECF No. 138.)   The ensuing flurry of activity appears to have drawn Defendants' attention from the looming summary judgment deadline.   Nearly two weeks after the deadline passed, Defendants filed a motion for extension of time to file a summary judgment motion.   The magistrate judge granted the motion by Order entered July 13, 2016.   However, due to the state of the docket, the magistrate judge suspended the dispositive motions deadlines generally until he issued rulings on

---

[8] Count Two suffers from a number of pleading deficiencies.   Among them is the fact that the fraud claim is pled as if the magistrate judge, rather than Mollohan himself, was the innocent party harmed by BOTW's alleged fraud.   (Am. Compl. at 8 ("Plaintiffs believe that it was the Defendant's intention to 'dupe' the Court and the Magistrate Judge by presenting a color drawing.").)   Mollohan would not have standing to bring a fraud claim on the magistrate judge's behalf.   The Court has liberally construed the Amended Complaint in treating the fraud claim as if Mollohan alleged personal injury brought about by BOTW's fraud.

the parties' many outstanding motions.   The magistrate judge further ordered the parties to cease filing any additional motions or documents until further notice.

Nevertheless, Defendants filed a motion for summary judgment on August 2, 2016.   As noted previously, Mollohan chose not to file a substantive response at that time.   On March 16, 2017, the Court informed the parties that it would consider Defendants' summary judgment arguments only in support of Counts IV and IX.   The Court ordered Mollohan to respond to the summary judgment motion, limiting his response as relevant to those counts only.   Mollohan filed his response on March 28, 2017.[9]   The Court proceeds to consider whether summary judgment is warranted on Counts IV and IX.

A.    *Legal Standard*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides that a court should grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

---

[9] Also pending is a motion for summary judgment filed by Mollohan on May 31, 2016. The motion is based on insufficient notice of a deposition that has already been taken.   At a status conference held January 18, 2017, the magistrate judge informed Mollohan that he would recommend the Court deny the motion.   Though the Court withdrew the referral before the magistrate judge issued a recommendation for disposition, the Court adopts his findings and accordingly **DENIES** Mollohan's motion for summary judgment.   (ECF No. 228.)

When construing such factual issues, the Court must view the evidence "in the light most favorable to" the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

B.      *Copyright Infringement*

Copyright protection extends to "original words of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated."   17 U.S.C. § 102(a).   A plaintiff claiming copyright infringement must prove that (1) he "owned the copyright to the work that was allegedly copied,"

22

and (2) "the defendant copied protected elements of the work."  *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 353 (4th Cir. 2001) (citing *Towler v. Sayles*, 76 F.3d 579, 581 (4th Cir. 1996)); *see also Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015) (setting forth same elements).  Defendants seek summary judgment on Mollohan's copyright infringement claim, arguing that Mollohan did not author the by-laws over which he has obtained copyright protection.

The Court must make one point clear.  Mollohan has never provided copies of his copyrighted works to the Court.  The Court has access only to Mollohan's certificates of registration, from which little can be gleaned.  The Court assumes that Mollohan obtained or attempted to obtain copyright protection for a set of by-laws only because first, one of Mollohan's copyright certificates covers a literary work titled "by-laws," and second, Mollohan alleges that BOTW infringes on his copyright by continuing to use its by-laws.[10]  (Am. Compl. at 11.)

The Court begins with the issue of whether Mollohan owns the copyrights.  Mollohan's Amended Complaint alleges copyright infringement over three copyrighted works, identified as "Brothers of the Wheel," Registration No. TXu 1-857-219, "Brothers of the Wheel M.C. By-Laws," Registration No. TX 7-800-119, and "Brothers of the Wheel M.C. Nomads," Registration No. VA 1-908-258.[11]  The Copyright Act provides that a certificate of registration, made before

---

[10] One glaring issue that should be apparent here is that by-laws are likely not sufficiently original or creative to merit copyright protection.  Because Mollohan's copyright infringement claim fails readily on other grounds, the Court does not belabor this point.

[11] Mollohan has also obtained copyright protection over a work titled "Brothers of the Wheel M.C.," Registration No. VAu 1-178-625.  Mollohan submitted the copyright registration certificate as an exhibit to his response in opposition to Defendants' Motion for Summary Judgment.  (ECF No. 373 Ex. E.)  The certificate indicates the work is text and 2-D artwork created in 2013.  The Court suspects this copyright covers BOTW's trademark-protected logo, though Mollohan has not submitted the copyrighted work for review.  In any event, because Mollohan does not reference this copyrighted work in his Amended Complaint, the Court does not consider Registration No. VAu 1-178-625 in evaluating Mollohan's

or within five years after first publication of the work, is prima facie evidence of the validity of a copyright.   17 U.S.C. § 410(c).   The existence of such a certificate creates a presumption of copyright that the opposing party must then rebut.   *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 434 (4th Cir. 1986)).   This is not a particularly difficult task.   *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010) (noting the presumption is "fairly easy to rebut because the Copyright Office tends toward cursory issuance of registrations"). As the Fourth Circuit observed in *Universal Furniture*, "the Copyright Office's practice of summarily issuing registrations . . . counsels against placing too much weight on registrations as proof of a valid copyright."   *Id.* at 428 (citation omitted).

Originality is "the *sine qua non* of copyright." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).   "To qualify for copyright protection, a work must be original to its author." *Id.*   Here, Defendants have put forth substantial evidence that Mollohan was not the author of the by-laws at issue.   They have provided two copies of by-laws used by BOTW, the first from 2000 and the other from 1979.   (Mot. Summ. J. Ex. I, XIV; ECF Nos. 269-2, 269-15.) Their contention throughout this proceeding has been that Mollohan simply copied BOTW's by-laws and submitted them for copyright registration.   More importantly, Mollohan admits as much in his response to the summary judgment motion.   The Court quotes here from Mollohan's responsive memorandum:

> Plaintiff Mollohan did not "send in" and obtain a copy of the defendants' By-Laws. Plaintiff was given numerous versions and copies of those By-Laws over the years as he was a long-time member of the Defendant's enterprise. Furthermore, Plaintiff Mollohan was a member in good standing of the defendants' motorcycle club for

---

copyright infringement claim.   Mollohan's decision to limit his copyright infringement claim to the by-laws when he maintains relevant copyrights over visual art is also a mystery.   Nevertheless, the Court will hold Mollohan to his Amended Complaint.   Mollohan does not allege infringement as to any work other than the by-laws.

> many years and the By-Laws in Plaintiff Mollohan's possession were older By-Laws that have likely not been used for some time and have likely been revised again and again since he was a member of the defendants' club.

(ECF No. 373 at 4.)   Mollohan's own words condemn him.   He concedes that he obtained copyright protection over a previous version of BOTW's by-laws that he received while he remained a member of the club.   Conspicuously absent is any assertion by Mollohan that he authored the by-laws.   Since Mollohan provides no proof that he authored the copyrighted material, no genuine issue of material fact exists as to ownership.

The Court also notes, as to the second element of a copyright infringement claim, that Mollohan has not created a triable issue here either.   Throughout this litigation, Mollohan has defended his copyright infringement claim by relying exclusively on his certificates of registration. He has never produced a copy of the by-laws to which he demands protection.   Without providing a copy of the written work submitted to the Copyright Office, the Court cannot possibly compare BOTW's by-laws to Mollohan's.   This copyright infringement claim is utterly frivolous. Defendants' motion for summary judgment on Count IV is **GRANTED**.

### C.   *Abuse of Process*

Count IX of the Amended Complaint alleges abuse of process in connection with the scheduling of a deposition in the Kanawha County case.   The Supreme Court of Appeals of West Virginia described an abuse of process claim as follows:

> Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance . . . . The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding.

25

*Preiser v. MacQueen*, 352 S.E.2d 22, 28 (W. Va. 1985)).   Harm to the plaintiff is also an element

of an abuse of process claim.   *See Williamson v. Harden*, 214 W. Va. 77, 80 (W. Va. 2003).   At

least theoretically, an action for abuse of process lies for the misuse of deposition procedures.   *See*

*Thornton v. Rhoden*, 245 Cal. App. 2d 80, 94–95 (1966) ("Although the giving of a notice that a

deposition will be taken is not 'process' in the strictest sense of the word we are inclined to the

belief that in a proper case an abuse of the powers which a litigant derives from the taking of a

deposition on proper notice gives such notice the status of 'process' for the purpose of the tort

under consideration." (citation omitted)).

The Amended Complaint alleges simply that BOTW and its counsel abused process by

noticing Mollohan's deposition in the Kanawha County case on the same date and time as a hearing

scheduled in the 2011 litigation.   (Am. Compl. at 18.)   In moving for summary judgment on this

claim, Defendants state that the deposition at issue was scheduled to immediately follow a hearing

in Case No. 2:11-cv-00104 on February 14, 2014.   Defendants' counsel avers that he informed

Mollohan at the hearing that the deposition would commence at the hearing's conclusion.

Counsel's proffer is not presented in a form that would be admissible as evidence and therefore

cannot be used to support a motion for summary judgment.   However, Defendants also supply an

Order from the Kanawha County Circuit Court, wherein the state circuit judge sanctions Mollohan

for refusing to appear at his noticed deposition.   (Mot. Sum. J. Ex. XIX, Kanawha Cty. Circuit

Court Order (Feb. 24, 2014, *amended* Jan. 4, 2017).)   The Court takes judicial notice of the Order

and finds that the circuit judge's findings tend to disprove Mollohan's contention that BOTW acted

with improper purpose in scheduling Mollohan's deposition.

The burden now shifts to Mollohan to put forward evidence showing a genuine issue of material fact.   Mollohan fails to do so.   Instead, he devotes his response to expanding his abuse of process allegations to include other conduct on the part of Defendants that allegedly constitutes abuse of process.   He hearkens back to a document he filed in June 2016.   On June 9, 2016, Mollohan filed a document entitled "Abuse of Process by Defendants."   As with many of Mollohan's docket submissions, the motivation for this particular filing is unclear.   The document provides a brief summary of the law relating to abuse of process and sets forth several pages of so-called "facts" supporting Mollohan's abuse of process claim.   Mollohan argues that Defendants acted with an ulterior motive by bringing claims against Mollohan.   He claims Defendants grew angry following Mollohan's separation with BOTW's club and threatened Mollohan and the members of his Nomads club in retaliation.   These accusations are all irrelevant, and appear to be offered in an attempt to draw attention from the total lack of evidence to support Mollohan's central accusation, that is, that Defendants abused process by scheduling his deposition at an unworkable time.   The Court will not consider extraneous abuse of process claims that were not alleged in the Amended Complaint.

Further, even if Mollohan's allegations relating to his deposition were sufficient to demonstrate a jury question on the issue of ulterior motive, Mollohan has made no showing that he incurred any injury as a result of the scheduling snafu.   His failure to demonstrate a genuine dispute on the issue of damages requires summary judgment in favor of Defendants.   The Court therefore **GRANTS** summary judgment in Defendants' favor on Count IX.

## IV.    DEFENDANTS' COUNTERCLAIM

Defendants filed their Answer and Counterclaim on September 22, 2014.   (ECF No. 78.) Upon review of the Counterclaim after withdrawing the referral to the magistrate judge, the Court suspected that Defendants failed to state a claim upon which relief can be granted.   By Order entered March 16, 2017, the Court ordered Defendants to show cause as to why their counterclaim should not be dismissed accordingly.   Defendants responded on March 28, 2017.   For the first time since filing their counterclaim over two and a half years earlier, Defendants defined their causes of action and specified their claims for relief against Mollohan and Visconi.   They request leave to file an amended counterclaim if the Court deems the original insufficient.

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim or counterclaim for "failure to state a claim upon which relief can be granted."   A complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."   *Id.* at 570.   While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."   *Id.* at 555.   This includes the requirement that a plaintiff, or counterclaimant as is the case here, must allege facts sufficient to state all the elements of his or her claims.   *See Bass v. E.I. DuPond de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002)).

"The general rule is in limited circumstances, *sua sponte* dismissals of complaints under Rule 12(b)(6) . . . are appropriate, but that such dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond." *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002) (omission in original) (citations omitted); *see also Shaheen v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) ("[T]he court is not required to ignore an obvious failure to allege facts setting forth a plausible claim for relief. In such a circumstance, the court is authorized to dismiss a claim *sua sponte* under [Rule 12(b)(6)], as long as there is notice and an opportunity to be heard." (citations omitted)).   Here, the Court gave Defendants notice that their counterclaims were subject to Rule 12(b)(6) dismissal and provided them a full opportunity to respond.   The Court has reviewed Defendants' responsive memorandum but still determines that the counterclaims are insufficient.

Upon review of Defendants' counterclaim, the Court cannot determine the basis upon which relief is sought.   The counterclaim fails to identify any specific cause of action on which Defendants wish to proceed, let alone plead facts to support the relevant elements of a cause of action.   *Bass*, 324 F.3d at 765.   The only legal authority mentioned in the counterclaim— statutory or otherwise—is 18 U.S.C. § 841, the contempt statute.   Indeed, the few facts that are alleged are supportive of a contempt action related to the 2011 litigation.   Defendants allege Mollohan continues to flout the Court's 2011 summary judgment order by "willfully and contumaciously" continuing to use the word mark "Brothers of the Wheel" in West Virginia. They insist that he has not removed his "Nomads" webpage from the internet and has threatened BOTW's members and vendors with legal action for using BOTW's logo.   (ECF No. 78 at 6.)

Defendants' allegation that Mollohan is guilty of civil contempt for violating a court order issued in the previous litigation cannot constitute an independent cause of action. *See D. Patrick Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993) ("[T]here is no such thing as an independent cause of action for civil contempt." (quoting *Blalock v. United* States, 844 F.2d 1546, 1550 (11th Cir. 1988) (per curiam) (internal quotation marks omitted)). If BOTW seeks to secure Mollohan's compliance with the Court's prior order, the appropriate procedure would be for BOTW to file a civil contempt motion in the other case. *See Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 445 (1911) ("Proceedings for civil contempt are between the original parties and are instituted and tried as part of the main cause."); 4 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 1017 (2017) ("Civil contempt proceedings are considered to be a part of the action that is the source of the order that is the subject of the noncompliance.").

Defendants' recent response to the Court's request for comment attempts to expand on the counterclaim's limited allegations. While they still do not expressly define the causes of action they wish to pursue, Defendants now apparently seek the cancellation of Mollohan's trademark (Registration No. 4299480), a declaration of rights regarding Mollohan's copyrights, and damages for tortious interference with contractual expectations. Defendants simply did not plead these claims in their counterclaim. *See supra* at 15. Tacitly conceding the point, Defendants seek leave to amend their counterclaim. The Court must conclude that such a request comes too late in this litigation. Defendants filed their counterclaim two and a half years ago, shortly after the magistrate judge granted Mollohan a final opportunity to amend his pleading. (*See* Order at 5, ECF No. 65.) Allowing Defendants to file an amended counterclaim at this late hour would unquestionably prejudice Mollohan, among other things, by demonstrating favoritism for

30

Defendants.   *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (counseling district courts to deny leave to amend under Rule 15 when amendment would be prejudicial to the opposing party).   Accordingly, the Court denies leave to amend.

V.     <em>THREAT OF RULE 11 SANCTIONS</em>

The above findings lead the Court to consider the propriety of Rule 11 sanctions against Mollohan. "[T]he central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).   To that end, Rule 11 creates an expectation that by presenting a pleading, written motion, or other paper for judicial consideration, attorneys and *pro se* litigants alike certify:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).   Rule 11(c) provides for the imposition of sanctions for violations of these directives.   Sanctions may be awarded upon motion by any party, Rule 11(c)(2), or by the court's own initiative, Rule 11(c)(3), after providing notice and a reasonable opportunity to respond. Courts have broad authority to fashion sanctions so long as they are "limited to what suffices to deter repetition of the conduct or comparable conduct of others similarly situated."   Rule 11(c)(4). Where a court finds a Rule 11 violation *sua sponte*, sanctions may include "nonmonetary

31

directives," an order to pay a penalty to the court, or other monetary sanctions.   Fed. R. Civ. P. 11(c)(4), (5).

Mollohan is required to conform to Rule 11's standard.   Yet Mollohan pursued, in the 2011 case and again in the instant litigation, legal claims that have no basis in law or fact and appear to have been presented exclusively for the purpose to harass, insult, and embarrass BOTW and its members.   The Court's prior judgment has not deterred him from that goal.   Mollohan has also been admonished repeatedly for his practice of filing multiplicitous and counterproductive papers.   This chiding has had no perceptible effect.   Mollohan is hereby placed on notice that if he continues, in this or any other previous, current, or future case before this Court, to pursue baseless legal claims or present filings in a duplicative manner, the Court will consider imposing Rule 11 sanctions.   His abuses of the judicial system will not continue.   If Mollohan chooses not to heed this warning, he does so at his own peril.

## VI.   CONCLUSION

For these reasons, the Court **DISMISSES** Counts I, II, III, V, VII, and XI of the Amended Complaint, **WITH PREJUDICE**.   Mollohan's Motion for Summary Judgment, (ECF No. 228), is **DENIED**.   The Court **GRANTS IN PART** Defendants' Motion for Summary Judgment. (ECF No. 269.)   The Court **GRANTS** summary judgment on behalf of Defendants on Counts IV and IX of the Amended Complaint, and **DISMISSES** Counts IV and IX **WITH PREJUDICE**.   The Court *sua sponte* **DISMISSES** Defendants' counterclaim as to Mollohan and Counter-Defendant Frank Visconi for failure to state a claim upon which relief can be granted.   (ECF No. 78.)   The Clerk of the Court is **DIRECTED** to remove the case from the docket of this Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 31, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

33